### J. L. Cauble et al. v. Victoria Worsham et al.

#### No. 1148. Decided December 11, 1902.

**1.—Wife's Separate Property—Parol Gift—Equitable Estate—Conveyance.**

A married woman, by parol gift from her father of a tract of land which she thereupon took into possession and improved, acquired an equitable title which was both an estate of freehold and inheritance, and under the statute (Revised Statutes, arts. 624, 635) could only be conveyed by her deed, joined by her husband, with her separate acknowledgment, such conveyance being as necessary for an equitable as for a legal title. (P. 92.)

**2.—Same—Deed by Donor to Vendee of Donee.**

The interest in land acquired by a married woman as her separate property by parol gift followed by possession and improvements, could not be conveyed, to one purchasing it from her, by deed to him from the donor, who still held the record title; nor was she estopped from claiming title by consenting that it should be so conveyed and receiving the purchase money. (Pp. 92, 93.)

**3.—Equitable Title—Who Can Assert Against the Legal One.**

One purchasing by quitclaim deed the interest of an equitable owner in land, not being a stranger to that title, can assert it against a conveyance of the legal estate by the holder thereof to a third party. (Pp. 92, 93.)

**4.—Quitclaim Deed—Parol Evidence.**

A quitclaim deed passed whatever interest the grantors had in the land, and

evidence was not admissible to show that it was intended to pass only the interest acquired from a particular source.  (P. 93.)

**5.—Deed—Evidence.**

Evidence considered and held too uncertain to establish a conveyance of land of any particular character, or justify the submission of issues as to limitation depending on a conveyance having been given.  (Pp. 90, 91, 93.)

**6.—Query—Limitation—Interruption by Suit—Tacking Disabilities.**

Land which had been community property was sued for by children holding the deceased father's interest, but asserting no right in the mother, who was then a married woman.  Question is made, but not decided, as to the effect of her death and descent cast on the plaintiffs upon limitation as to her interest.  Her disability could not be tacked to that of plaintiffs; but could it not be to their pendency of suit?  (Pp. 93, 94.)

Error to the Court of Civil Appeals for the Fifth District, in an appeal from Hill County.

Worsham and others sued Cauble and others and recovered judgment. Defendants appealed, and on affirmance obtained writ of error.

*Ivy & Scruggs* and *A. P. McKinnon,* for plaintiffs in error.—A verbal gift of land followed by actual possession of same with valuable improvements made by the donee on the faith of such gift confers title on the donee, and if the donee is a married woman, in order to convey her title to the land it is necessary that she execute a written deed to same in which her husband joins, and such deed must be duly acknowledged by her separately and apart from her husband.   Owens v. Land Co., 32 S. W. Rep., 1057; Fitzgerald v. Turner, 43 Texas, 84; Berry v. Donley, 26 Texas, 744; Moores v. Linney, 21 S. W. Rep., 709.  On question of estoppel as applied to married women, see: McLaren v. Jones, 89 Texas, 131; Wright v. Doherty, 50 Texas, 41; Bell v. Schwartz, 56 Texas, 353; Steed v. Petty, 65 Texas, 496.   That defendant claiming under common source can, as against plaintiff, interpose defense that plaintiff's title is invalid, see Tolbert v. McBride, 12 S. W. Rep., 752; Inge v. Cain, 65 Texas, 75.

We submit that defendant having gone into possession of the land in 1887, continuously used same, and paid all taxes thereon until the filing of this suit, his title by limitation as to Mrs. Williams (nee De Chaumes) and her heirs, plaintiffs herein, became complete as to the one-half community interest which she owned as the surviving wife of F. D. De Chaumes, deceased.  During the time that she was married to her husband, Williams, the statute of limitations did not commence to run against her, as she was during such time a married woman, but on her death in 1891 or 1892, when Cauble's possession and use of the land and paying taxes on same was continuing, under deed duly recorded in year 1887, then as to her heirs, plaintiffs, the statute of limitations did commence to run, regardless of the question whether any of them were minors or married women, as they could not tack disabilities, and Mrs. Williams having died more than five years before the bringing of this suit, the statute became a complete bar in favor of defendant Cauble

as against her heirs, plaintiffs in this suit. Now, then, if the purported deed from her to Mrs. Kirkpatrick some time in the year 1884, which was not joined in by her husband, Henry Williams, conveyed a life estate for her life, then perhaps her children would not be barred as to her one-half undivided community interest in the land, but if the purported deed from her to Mrs. Kirkpatrick did not convey a life estate for life of Mrs. Williams, but was in legal effect no conveyance at all, then her children would be barred as to her community interest in said land. Now, we submit, as this land was community property of Mrs. Williams and her first husband, De Chaumes, upon the death of De Chaumes she was the owner of one-half undivided interest in same. After she married Henry Williams she could not, being a married woman, convey to Mrs. Kirkpatrick any interest in the land, whether same were a life estate or her entire estate, without her husband, Williams, joining in the deed. This he did not do, and while Mrs. Kirkpatrick says the deed was acknowledged before one Calloway, there is no evidence that there was any certificate of acknowledgment of Calloway, or that Calloway was an officer authorized to take acknowledgment, or that she had acknowledged the deed separately and apart from her husband; that she had willingly signed the same and did not wish to retract it. In short, there was no evidence of any compliance with the law as to the making of a deed and the acknowledgment of same by a married woman, or that there was any certificate of acknowledgment of the officer before whom the acknowledgment was made.

*R. M. Vaughan* and *F. P. Works,* for defendants in error.—The court did not err in refusing to give in the charge to the jury appellants' special charges, because it is competent for one holding real estate for another to make conveyance of the same to a third party on request of the party for whose benefit the title to said land is held, and in this case D. B. Cauble, the father of Mrs. S. E. Kirkpatrick, having made a gift of the land in controversy to his said daughter, and she and her husband having sold the land to appellees' ancestor, F. D. De Chaumes, and having requested said D. B. Cauble to make deed for them direct to said De Chaumes, title to said land passed to said purchaser by said deed from said D. B. Cauble.

An equitable title to real estate may be conveyed without a strict technical compliance with the rules governing transfer of land as is required in the conveyance of legal title. Mrs. Kirkpatrick only being vested at best with an equitable interest, viz., such rights that a legal title could be decreed her by a court, she never having obtained any legal title by deed from her father, D. B. Cauble could and did make a valid and binding conveyance of all her interest in the land to appellees' ancestor, F. D. De Chaumes, without said conveyance being reduced to writing, and privily acknowledged by her. Frost v. Wolfe, 77 Texas, 460; Tom v. Sayers, 64 Texas, 342; Baldwin v. Richardson, 33 Texas, 16.

A stranger in possession of real property can not defend against a

purchaser from a married woman on the ground that the title is still in the married woman for want of compliance with the statutes regulating the sale of property of married women. Fisk v. Miller, 13 Texas, 225; Tom v. Sayers, 64 Texas, 342.

Our law does not only uphold and approve of parol partitions of real estate generally, but it has been specially held that a married woman is bound by such parol partition of land, where no unfairness is shown, and she acquiesces in it, and her husband consented to the division, and this where the wife gave no direct consent to the partition, but was represented by her husband. The 100 acres formed part of a larger tract and was not partitioned therefrom until the execution of the deed by Cauble to De Chaumes, when it was surveyed. In this case, Mrs. Kirkpatrick was not only joined by her husband in the sale to appellees' ancestor, De Chaumes, but the deed was made from her father, D. B. Cauble, at her special instance and request, with her husband positively joining therein. They not only surrendered possession to De Chaumes, and remained away six years, but returned and purchased some kind of interest in the land from the widow De Chaumes after her marriage to Williams. Wardlow v. Miller, 69 Texas, 399; Ikard v. Thompson, 81 Texas, 290.

A party who obtains a deed to land, when he knows at the time he purchases that his vendor has previously parted with the title, is guilty of a fraud which the law will not countenance, and will destroy the conveyance to him as muniment of title. When Columbus Surginer purchased the land in controversy, and received a deed thereto from D. B. Cauble, he was fully advised and had positive notice of the fact that D. B. Cauble had theretofore, on request of Mrs. Kirkpatrick, deeded said land to appellees' ancestor, De Chaumes, in compliance with the gift of said land from said Cauble to his daughter, Mrs. Kirkpatrick, and on that account no title passed to said Surginer, by said deed, from D. B. Cauble. Grigsby v. May, 84 Texas, 254; Eliott v. Whitaker, 30 Texas, 412; Allen v. Root, 39 Texas, 590; Saunders v. Silvey, 55 Texas, 48.

The holder of junior deed for land to recover against the holder of the older title must prove payment of purchase money and absence of notice of the older conveyance. When Columbus Surginer bought the land in controversy, he had positive notice that D. B. Cauble, his vendor, had prior thereto conveyed said land to appellees' ancestor, De Chaumes. Rogers v. Pettus, 80 Texas, 427; Bremer v. Deffenbaugh, 60 Texas, 152; Watkins v. Edwards, 23 Texas, 448.

A quitclaim deed passes no title, but only such interest as the grantor owns at the date of its execution, and no more, and does not cut off a prior unrecorded deed or title. The presumption is that, by executing a quitclaim deed the grantor has doubts as to his rights, and he thus suggests these doubts in the face of his deed. The quitclaim deed from Kirkpatrick and wife to C. Surginer conveyed no title, but passed only the interest of the Kirkpatricks in the land in controversy which said

Kirkpatricks owned at the date of its execution, and it did not in anywise affect the prior unrecorded deed to appellees' ancestor, De Chaumes. Kirkpatrick and wife having first secured the execution of the deed to the land by their donor, D. B. Cauble, to said De Chaumes, and they having removed from the land, and having abandoned the same for the period of about six years, had returned to purchase some sort of an interest in said land from the widow De Chaumes, who had married a man by the name of Williams, and this quitclaim deed by them to Surginer was intended, and in fact did only convey said interest so purchased from said Mrs. Williams; and the jury having evidently found that Mrs. Williams had only conveyed to the Kirkpatricks a lifetime estate in said land, said quitclaim deed must be held to have in nowise affected title in said land. Richardson v. Levi, 67 Texas, 359; Carter v. Wise, 39 Texas, 275; Rodgers v. Burchard, 34 Texas, 452; Harrison v. Boring, 44 Texas, 260; Shepard v. Hunsacker, 1 Unreported Cases, 583; Fletcher v. Ellison, 1 Posey U. C., 667; Hamman v. Keigwin, 39 Texas, 42.

WILLIAMS, Associate Justice.—Defendants in error brought this suit to recover of plaintiff in error 153 acres of land in two tracts, one of 100 acres and the other of 53 acres; and in the District Court judgment was rendered for plaintiff, Mrs. Worsham, for an undivided half of the 100 acres, and for defendant, Cauble, for the 53 acres. The appeal of Cauble to the Court of Civil Appeals involved only the title to the 100 acres, and the judgment of that court, affirming that of the District Court, is brought in review by this writ of error. The titles of both parties proceed from D. B. Cauble, who, prior to 1876, was the owner of the land in controversy. In that year he made a verbal gift of the 100-acre tract to his daughter, Mrs. S. E. Kirkpatrick, who with her husband took possession of and made valuable improvements upon it and occupied it as their homestead for about two years. In 1878 they sold the land to F. D. De Chaumes, and, as D. B. Cauble had made no deed to Mrs. Kirkpatrick, it was orally agreed between all the parties that he should convey it directly to De Chaumes, which he did August 9, 1878. This deed was not recorded until March 18, 1895. Kirkpatrick and wife received the consideration and surrendered possession to De Chaumes and moved to another county, where they remained until 1884, when they returned to the neighborhood of the land. In the meantime F. D. De Chaumes had died and his widow had married one Williams, who was living with her upon the 100-acre tract. Kirkpatrick and wife bought from Mrs. Williams an interest and obtained a deed, the character of both of which is very indefinitely stated in the oral testimony in the record, the deed not having been produced. Concerning this transaction Mrs. Kirkpatrick testified: "We bought the land from the old lady and got a lifetime dowry." "Mrs. De Chaumes had married again, and was Mrs. Williams then. I don't know whether she had made me a deed, what you call a deed; she made me a lifetime

dowry; she made the deed, or whatever you might call it, to me and Mr. Kirkpatrick. We turned it and all the papers over to Mr. Surginer when we sold the place." "We sold it to him (Surginer) after we bought it back from the old lady De Chaumes." "Mrs. De Chaumes had married Williams when I returned to buy the place from her; she had been married but a short time and her children were living with her. I contracted to buy from her the lifetime interest; she is dead; she died four or five years after I bought her lifetime interest. We moved off the place and Surginer took possession of it. When I bought the place from Mrs. Williams I moved on it and moved off again inside of a year. The instrument that I got from Mrs. Williams was acknowledged before Calloway, I did not file it for record. Nobody joined in the deed besides Mrs. Williams; none of the children by either marriage joined in it." "When I bought the land back from Mrs. Williams, I bought the entire 154 acres; I gave her five or six hundred dollars for the land when I bought it back." "I bought a lifetime interest from Mrs. De Chaumes; I don't remember the words of the deed. I don't remember what the wording of the deed was." After this transaction Mrs. De Chaumes left the place and Kirkpatrick and wife, claiming under it alone, took and retained possession for less than a year, when Columbus Surginer bought the land, taking a warranty deed from D. B. Cauble, March 14, 1885, and a quitclaim deed from Kirkpatrick and wife April 1, 1885. Surginer paid the value of the land, and the testimony of Mrs. Kirkpatrick is that she received this consideration. Surginer took possession and afterwards conveyed part of the land to M. Wilhoit, April 7, 1887, and the other part to plaintiff in error, J. L. Cauble, August 19, 1887. Wilhoit conveyed his interest to J. L. Cauble, October 22, 1887. Surginer, Wilhoit and Cauble have kept up continuous possession under their deeds, which were duly registered, and have paid the taxes on the land. Mrs. Williams died in 1891 or 1892 and this suit was begun December 19, 1889. The plaintiffs assert the title of the ten children of De Chaumes, some of whom were the children of the widow who survived him and others the fruit of a former marriage. Five of them were held by the District Court to be barred by limitation, but the other five, having been under disability, were held not to be barred, and, as Mrs. Worsham held their interest by assignment, she recovered the half interest adjudged to her.

The defendant, Cauble, under his chain of title, claimed that Surginer, Wilhoit, and himself were all innocent purchasers for value without notice of the unrecorded deed from D. B. Cauble to De Chaumes, but upon evidence tending to show notice to each of them, the jury found against them on this issue, and this finding is not attacked.

Cauble also claimed that, under the gift from D. B. Cauble to Mrs. Kirkpatrick, accompanied by possession and improvement, such title vested in her, as her separate property and homestead, as could not be conveyed by the donor, nor by the donee, except by the joint deed of herself and husband properly acknowledged, and that this title vested in

him through the subsequent deed of Kirkpatrick and wife to Surginer, and entitled him to recover, without regard to other issues, and he requested a charge embodying this contention which the court refused to give. The Court of Civil Appeals held that Mrs. Kirkpatrick was estopped by the transaction between herself and her father and De Chaumes, and that defendant could not assert her right under the gift; and it was upon assignments calling in question these rulings that this writ of error was granted.

The evidence was sufficient to justify a finding that, upon faith of the gift from her father, Mrs. Kirkpatrick and her husband entered into possession and made improvements of such valuable and permanent character as entitled her to a specific performance at the hands of her father. Everything essential to take the oral gift out of the statute of frauds and to authorize the enforcement of it in equity having transpired, the equitable title to the property was thereby vested in the donee in her separate right. This proposition has long been settled by the decisions of this court. Hendricks v. Snediker, 30 Texas, 296; Murphy v. Stell, 43 Texas, 123; Wells v. Davis, 77 Texas, 636. Parol gifts thus executed are unquestionably placed by our decisions upon the same footing as parol sales of land, and where there has been such performance by possession and improvement as to meet the requirements of the decisions, the right which vests in a donee is of the same character as that which vests in a vendee, viz., the equitable title. Of such a right acquired by a vendee it was said in Harold v. Sumner, 78 Texas, 583: "Under this state of facts we think it quite clear that H. Chowning acquired a good title to the lots from T. Chowning." Several of the decisions recognize the right of the holder of such a title to recover or defend upon it in the action of trespass to try title either against the vendor or other persons. The estate which is thus created is, in equity, one both of freehold and inheritance. It is provided by article 624, Revised Statutes, "No estate of inheritance or freehold" shall be conveyed unless by writing; and by article 635, that "the husband and wife shall join in the conveyance of real estate, the separate property of the wife," and that the deed shall be separately acknowledged by the wife. From this it seems evident that Mrs. Kirkpatrick acquired an estate in the land which could not be conveyed by D. B. Cauble, and which could only be legally conveyed by herself and her husband. It is urged that because her right was not a legal but only an equitable one, she could legally authorize the conveyance of it by her father by deed passing his legal title. But no such distinction between conveyances of legal and equitable estates is admissible under our statutes. Masterson v. Little, 75 Texas, 697; Sprague v. Haines, 68 Texas, 217. Since her father could not by his mere deed pass her title, a conveyance by her was necessary; and that conveyance could not consist of her parol agreement either that she would or that her father might convey, for the reason that the statute requires a particular kind of conveyance to divest her separate estate. Nor is it true that the defendant could not assert that the trans-

action was inoperative upon the title. His position is that, since this title did not pass to De Chaumes but remained in Mrs. Kirkpatrick, Surginer regularly acquired it from her and defendant acquired it from Surginer. He is not a stranger to the equity asserted against the legal title, but connects himself with it by the deed from the original holder of it. Little v. Masterson, supra; Harold v. Sumner, 78 Texas, 582; Murphy v. Stell, supra; Secrest v. Jones, 21 Texas, 132. An attempt was made in the argument to show that the quitclaim deed of the Kirkpatricks to Surginer was intended to convey only such interest as the grantors had acquired through their trade with Mrs. De Chaumes under which they re-entered. But the record only states the quitclaim deed as covering the 100 acres, which we understand to mean that the grantors conveyed such interest as they had in the tract. The deed therefore operated upon any title of which they were possessed. Evidence was admissible to show any title which was vested in the grantors at the date of their deed, and the effect of the deed upon such title could not be limited by parol evidence. Ragsdale v. Mays, 65 Texas, 257.

The facts stated do not show an estoppel against Mrs. Kirkpatrick. The elements essential to the estoppel of a married woman have been so often discussed and stated in the decisions of this court as to render elaboration unnecessary. The evidence shows no misrepresentation, concealment or deception of any character on the part of the feme covert; nor does it tend to show that De Chaumes was ignorant of the true state of the facts and the character of her right. It exhibits only a mistaken attempt to obtain the title of a married woman by an ineffectual method. To hold that she is estopped by her bare parol agreement to pass away her title, even for a consideration received, would be to authorize a mode of conveyance forbidden by the statute by the mere substitution of terms. Berry v. Donley, 26 Texas, 738; Fitzgerald v. Turner, 43 Texas, 79; McLaren v. Jones, 89 Texas, 131; Steed v. Petty, 65 Texas, 490.

Plaintiff in error requested a charge explaining to the jury the essentials of a valid conveyance by Mrs. Williams and her husband and the effect upon questions of limitation of a finding that a sufficient conveyance had not been made by them to pass any interest. We are of the opinion that the evidence which we have recited is too uncertain to establish a conveyance of any particular character, and no question should have been submitted to the jury upon the assumption that either party might have acquired rights through a conveyance. Neither side produced a deed, nor gave any reason why it was not done; and neither had the right to have the jury to indulge in mere conjecture as to the true nature of the transaction. The assignment upon the refusal of the special charge only indirectly raises a question of some merit. Such title as De Chaumes obtained from Cauble was community property of himself and the wife who survived him. This suit was instituted by his children before the death of the survivor. When they sued they only had title to the interest inherited from their father, or such portions of it as defendants had not acquired by limitation. Had limitation then been

running against Mrs. Williams it would not have been stopped by the suit of her cotenants asserting no right in her. Stovall v. Carmichael, 52 Texas, 383. Limitation was not running against her because of her coverture, but she died pending suit, and her interest descended to her children, who were parties therein. Their disabilities could not be tacked to hers, but limitation, unless prevented by the pendency of the action, commenced to run against this interest upon her death. The record has probably not been made up with reference to this question, and it has not been argued. As we have concluded to remand the case for a new trial, we merely suggest it to avoid misapprehension, without undertaking to definitely determine the rights depending on it.

*Reversed and remanded.*