## REEVES et ux. v. SAN ANTONIO BUILDING MATERIALS CO. et al.

### No. 8269.

Court of Civil Appeals of Texas. San Antonio. March 6, 1930.

Rehearing Denied May 7, 1930.

Huson & Huson, Ray Marshall, and Whitaker & Hays, all of San Antonio, for appellants.

Ingrum & Smith, of San Antonio, for appellees.

ESKRIDGE, Special Chief Justice.

In August, 1928, appellee, the San Antonio Building Materials Company, executed and delivered to appellants a warranty deed purporting to convey certain property in San Antonio. An express vendor's lien was retained in the face of the instrument, and, in addition thereto, deed of trust was given to better secure the payment of what purported to be purchase price notes. Upon default in payment of the notes, the trustee advertised the property for sale, and this suit was instituted to enjoin the threatened sale and to cancel the liens as a cloud upon appellants' title. The theory upon which it is claimed this relief should have been given is as follows:

It is alleged that prior to the transaction just referred to appellants entered into a contract ·with one Helene Korff, a feme sole, whereby she agreed to sell to appellants, for a consideration of $1,750, the lot, title to which is now in controversy; that Helene Korff executed a deed in which appellants "or one of them" were named as grantees; that said "Helene Korff placed said deed with her agent in San Antonio to be delivered to plaintiffs upon payment by plaintiffs of said purchase price."

It is further alleged that, shortly after making the contract of sale, appellants entered into possession of the property, and with the actual or constructive knowledge of Helene Korff made valuable and permanent improvements thereon, to the extent of about $8,000; that the appellants and their family moved into said improvements and there lived as their place of residence and domicile, and "that by reason of said facts the plaintiffs became entitled to specific performance of said contract, which was oral"; that appellant A. C. Reeves, while making the improvements on the real estate, bought certain materials and received certain money advancements from San Antonio Building Materials Company, and, when the improvements on said lot were about to be completed, the materials company suggested that a deed be made by Helene Korff direct to it, and that thereupon it would convey to appellants, taking the notes and liens, and that this plan was followed; that this was "a scheme and subterfuge" on the part of appellee, and "was simulated and conceived for the sole purpose of attempting to place a lien on plaintiff's homestead in violation of law."

The general demurrer was sustained to the petition in the court below, and, the plaintiffs declining to amend, the suit was dismissed. The appeal is from this judgment.

■ The Statute of Frauds (Rev. St. 1925, art. 3995, subd. 4) requires contracts for the sale of real estate to be in writing. The one here involved is alleged to have been oral. Equity under certain circumstances seeks to soften the harsh legal rule and for the purpose of preventing manifest injustice and the perpetration of fraud will enforce performance of a parol contract for sale of real estate. Hence, if the appellants, relying upon a parol contract, met and performed all of the essential elements necessary to take the contract out of the Statute of Frauds, an equitable title passed from Helene Korff to them, and the homestead exemption attached, and the effort to fix a lien for the advancements of money and materials would be void.

Appellants in their petition and in their brief before this court seem to recognize that whether they had such title or interest in the property depends upon whether or not they could have, if occasion demanded, enforced specific performance against Helene Korff. We think this position is sound, and that therefore the sole inquiry here is whether the petition alleges facts which, taken as true, would have given appellants grounds for specific performance of the contract.

It is stated, in the case of Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893, 895, what is necessary to take a parol contract for the sale of real estate out of the Statute of Frauds, as follows: "First, the minds of the parties must have met in an oral agreement to sell; second, the purchase money must have been paid, and possession de-

livered by the vendor to the vendee; third, on the faith of the transaction the vendee must have made valuable improvements upon the property. If these three things concur, it is immaterial whether the sale be evidenced by any writing."

This case is cited with approval and this particular holding reaffirmed in the case of Page v. Vaughan et al. (Tex. Civ. App.) 173 S. W. 541. In this latter case one of the essential elements, to wit, valuable improvements, was lacking, and the court held that the claimed vendee had neither a legal nor an equitable title, and there was no basis for the homestead claim, even though it be admitted that the original contract price had been paid. Certainly, if the presence of the three elements is essential and in the case now at bar the requirements with reference to possession and valuable improvements were both met but the purchase price was not paid, and no equities are pleaded excusing payment, then for no less strong reason than in the Vaughan Case it must be held that neither a legal nor an equitable title passed, and hence no homestead exemption claim attached.

The Texarkana Court of Civil Appeals, in the case of Wells v. Foreman, 199 S. W. 1174, 1175, in passing upon the question of the enforcement of the parol sale of land, said: "And this court has held, and adheres to the ruling, that there must be not only payment of purchase money and change of possession, but valuable improvements as well must be made upon the property by the vendee."

In the case of Babcock v. Lewis, 52 Tex. Civ. App. 8, 113 S. W. 584, the court enforced the specific performance of a parol contract for the sale of land even though the purchase money had not been paid, but this was done upon the theory that the findings of the jury, based upon sufficient evidence to support it, showed that the vendor repudiated the contract and rendered it unnecessary for the vendee to make a formal tender of the amount due.

The Austin Court of Civil Appeals, in the case of Hofheinz v. Wilson, 286 S. W. 958, 960, says: "A verbal sale of real estate, where vendee takes possession and makes improvements in good faith and pays the agreed purchase price, is not within the statute of frauds."

We take it that this amounts to holding that the converse of the proposition is true; that is, that a verbal sale of real estate, where vendee takes possession and makes valuable improvements, but does not pay the purchase price or offer any reason in equity for failing to do so, then such contract is within the Statute of Frauds and therefore not enforceable.

The Amarillo Court of Civil Appeals, in the case of Hickman v. Talley, 8 S.W.(2d) 267, 270, says: "We understand that it is settled law in this state that, in order to take a parol sale of real estate out of the statute of fraud, it must be alleged and shown that the vendee took possession of the property under the contract and made valuable and permanent improvements thereon, relying on the contract, and must also allege and show the payment of a consideration."

This court, in the case of Mondragon v. Mondragon, 239 S. W. 650, 653, made the following statement with reference to enforcement of parol contracts for the sale of real estate: "Payment of a substantial part, or all, of the purchase price must be accompanied by the grantee taking possession of the property, and placing substantial improvements of a permanent nature thereon. The three elements must concur in order to constitute a parol sale of land."

This case was reversed by the Supreme Court, but on other grounds; the Supreme Court holding that the instrument involved was a valid contract of sale and enforceable under the Statute of Frauds.

Appellants seem to rely largely upon the statement made by this court through Chief Justice Fly in the case of Dixon v. McNeese, 152 S. W. 675, 676, wherein it is stated: "It is well settled in Texas that a parol sale of land will be upheld where the vendee has been put in possession of the land, and, relying on the parol sale, has made valuable improvements thereon. Such circumstances create an equitable title in the vendee, and courts of equity will enforce his rights. To constitute a valuable consideration, it is not necessary that the purchase money should have been paid, but, if money has been expended in improvements on the property on the faith of the verbal contract, it constitutes a valuable consideration."

We think that part of the preceding quotation which apparently asserts that money expended for improvements may stand in lieu of the payment of the purchase money can be considered only as obiter dictum, for preceding statements in the opinion show that the vendee had paid $4,000 on the land prior to the filing of the abstract of judgment, and that he thereafter paid the balance of the purchase money. Furthermore, this opinion was rendered prior to the decision by the Supreme Court in the case of Hooks v. Bridgewater, reported in 111 Tex. 122, 229 S. W. 1114, 1116, 15 A. L. R. 216, and, until this latter case is overruled or modified, the duty is incumbent upon this court to faithfully follow it. In the Bridgewater Case, Chief Justice Phillips, in plain and unambiguous language, says that it has been the law of Texas since the case of Garner v. Stubblefield, 5 Tex. 552: "That to relieve a parol sale of land from the operation of the statute

of frauds, three things were necessary: 1. Payment of the consideration, whether it be in money or services. 2. Possession by the vendee. And 3. The making by the vendee of valuable and permanent improvements upon the land with the consent of the vendor."

The only exception, if indeed it may be called such, that seems to us now to be left to the rule as above given, is "the presence of such facts as would make the transaction a fraud upon the purchaser if it were not enforceable." For instance, where the purchase price was not paid because the vendor, in repudiation of his contract, refused to accept it. The case at bar presents no such situation.

We think that no title passed out of Helene Korff until her deed was delivered to the materials company. As a part of this transaction, appellants accepted title from said company, executing the notes and deed of trust in consideration therefor, and in so doing they became bound. To hold otherwise would not be protecting them against fraud, but rather would be condoning the commission of a gross inequity upon appellee.

After the rendition of the Bridgewater Case, this court again had occasion to pass upon the question of enforcement of a parol contract for the sale of land, and to discuss the elements essential to taking it out of the Statute of Frauds. In Hauser v. Zook (Tex. Civ. App.) 278 S. W. 518, this court, speaking through, Justice Cobbs, followed and approved the holding in the Bridgewater Case. Application for writ of error was dismissed.

Following, therefore, the unequivocal rule laid down by the Supreme Court in the Bridgewater Case and the long line of decisions upon which it is based, we are of opinion that the plaintiff in the court below did not allege all of the essential facts to bring their case without the Statute of Frauds, and that hence the general demurrer was properly sustained. The judgment of the trial court is affirmed.

The opinion of this court heretofore filed is withdrawn, and this opinion substituted therefor.

COBBS, J. (dissenting).

Chief Justice FLY having entered his disqualification in this case, Honorable MARSHALL ESKRIDGE was appointed, and he writes the opinion of the court.

Appellants sued appellees to remove cloud from title to lot 13, block 14, new city block 3282, in the city of San Antonio, Tex. Appellees agree that the facts stated by appellants, in their brief, are correct in every particular except that the allegation that the purchase money was "to be paid when deed was delivered" is incorrect, and the language should be, as contained in the petition, "to be delivered to plaintiffs upon payment by plaintiffs of said purchase price."

In their original petition, appellants alleged that they are husband and wife and have several children and occupied the status of a family long before and at the times specifically mentioned, and that in the year 1928 they purchased the land described from one Helene Korff, a feme sole, under the agreement that the latter would deliver deed to appellants "upon payment by them of said purchase price" of $1,750, and that with the knowledge and acquiescence of the seller they immediately entered upon and took possession of said lot and began the construction of permanent and valuable improvements thereon, which were afterwards substantially completed, consisting of a dwelling house, garage, etc., of the value of $8,000, and that, as soon as the building had progressed sufficiently to permit it, appellants and their family moved into same, using and occupying same as their home and homestead, for which purpose the lot had been originally purchased and improvements erected, all of which was known to all of the appellees, and that Helene Korff executed a deed which she placed in the hands of her agent for delivery to appellants upon payment of the purchase price, and was at all times willing to carry out her part of said oral contract; that appellant A. C. Reeves bought certain lumber and material and borrowed certain moneys from the San Antonio Building Materials Company, for which no mechanic's liens or other securities against said lot had been given, and that, after said improvements were nearing completion, the said appellee requested that it be given security for said indebtednesses, and proposed that, inasmuch as the deed from said Korff to appellants had not been recorded, such deed be ignored, and that said Korff make a deed direct to said appellee, conveying said lot, and that said appellee would then deed said lot to appellants, retaining in the deed the vendor's lien to secure a note payable to it for $6,500; that said scheme was accomplished, and, at the time of executing said note for $6,500, the appellants were also induced to execute said deed of trust to William Seipel, trustee; that the real consideration for said vendor's lien note was not the purchase money of said lot; that thereafter said building materials company, claiming to be the owner of said liens, directed the said Seipel to sell said homestead under said deed of trust, which he was threatening to do when this suit was instituted; that the said Commercial Loan & Trust Company is claiming some interest in the property, and is made party defendant for the purpose of adjudicating its interest, if any.

The appellants alleged that said pretended vendor's lien was given and secured in an attempt to evade the provisions of the Con-

stitution of Texas prohibiting liens on homesteads, except for specified purposes, and that the liens asserted by said appellee building materials company were not within the purview of such exceptions, and that such purported liens constituted a cloud upon the title of appellants to said lot.

Appellants prayed that the pretended liens claimed by appellees, or some of them, against the homestead of appellants be canceled and annulled, and that the cloud cast thereby on appellants' title be removed, and that appellants be quieted in their title and possession of said homestead as against any claims or purported rights of any of the appellees, for costs, and for general, special, legal, and equitable relief, and also prayed for a writ of injunction restraining the appellees from selling said lot under said deed of trust; said petition being verified.

We copy this language because it was as to that the demurrer was sustained and the cause was dismissed. The point at issue is as to whether the facts show an equitable title in appellants so as to set up a homestead right.

It is appellants' contention that the land was purchased by the head of a family under a parol contract with the intention of making said land his family homestead, and prior to the payment of the purchase price and delivery of the deed appellants entered into actual and physical possession of the land in good faith, making valuable and permanent improvements for the purpose of a home for himself and family, with the knowledge and acquiescence of the seller. A vested homestead right in the land was thereby established, subject only to the purchase price, which was understood and agreed upon, to wit, $1,750, but not subject to the balance of the claim of $6,500.

The appellants' original petition alleges that appellant A. C. Reeves, being indebted to appellee San Antonio Building Materials Company for materials purchased and moneys loaned, which debts were unsecured, the said appellee demanded security for said pre-existing debt, and persuaded appellants to give it a lien on their homestead; that, in order to attempt to evade the provisions of the Constitution prohibiting liens on homesteads, said appellee proposed that, inasmuch as the deed from Korff had not been recorded, same should be ignored, and said Korff convey said lot to appellee, who would then reconvey to appellants, retaining the vendor's lien to secure a note for $6,500, executed by appellants, payable to said appellee; that said scheme was accomplished, the said Korff conveying to appellee, and appellee conveying to appellants, retaining said lien to secure said note for $6,500, which was executed by appellants, and, at request of appellee, appellants executed a deed of trust on said lot to William Seipel, trustee, additionally securing said note; that said note did not represent the purchase money of said property, but was given to secure an unsecured indebtedness of A. C. Reeves to said company; that said lien is void under the Constitution, and a cloud on the title.

Did the title to the property under the parol agreement and the subsequent acts of appellants create a purchase and sale? We think under the terms of the oral sale and purchase, when the appellants went into possession and made permanent improvements they took title thereto, subject to the original purchase price of $1,750. Especially is that true because the deed was executed and delivered to the agent, to be delivered when the purchase price was paid.

The lien was not given or fixed as required by law for materials contracted for in advance of delivery or work done. It did not cover taxes nor the actual purchase price of the property, but was given to secure a pre-existing debt for material bought on open account and money borrowed by appellant A. C. Reeves from the appellee San Antonio Building Materials Company. These facts neither constituted nor created an enforceable lien that could or did in any manner affect the homestead right or title.

The Constitution, art. 16, § 50, provides that the homestead of a family shall be protected from forced sale for the payment of all debts, "except for the purchase money thereof, or a part of such purchase money, the taxes due thereon, or for work and material used in constructing improvements thereon, and in this last case only when the work and material are contracted for in writing, with the consent of the wife given in the same manner as is required in making a sale and conveyance of the homestead," and all liens, except those expressly provided for, are null and void. The instrument was given to secure a pre-existing debt for materials bought on an open account and money borrowed by appellant A. C. Reeves from the appellee San Antonio Building Materials Company, and in whatever form it was presented it did not expunge itself of the vice in it.

It is too plain for argument, therefore, that, if the allegations in the petition are true, the claim for $6,500, evidenced by the note of A. C. Reeves, does not create a lien on the homestead of appellants, and that the court erred in sustaining the demurrer.

It must not be overlooked that the petition alleges that, at the instance of the said San Antonio Building Materials Company, Helene Korff, the original owner, though she had already executed her deed, in pursuance of the original contract, bearing date August 23, 1928, filed for record September 4, 1928, executed the other deed in question, and appellants executed their note for $6,500 as

agreed upon, payable to the order of defendant in monthly installments of $70 or more, with 8 per cent. interest, then executed a deed of trust to William Seipel, trustee, who, in pursuance thereof, is threatening to make a sale of the property thereunder. This merged the original agreement in the second agreement, which was substituted therefor.

It is distinctly and clearly alleged in plaintiffs' petition "that they did not in fact purchase said lot from said defendant, San Antonio Building Materials Company, and that said note for $6,500.00 was not made for the purchase price of said lot, but was given to pay the indebtedness of A. C. Reeves to said defendant for lumber, building material and monies advanced to him by said defendant; and that the said vendor's lien retained in said deed and said deed of trust to said William Seipel, trustee, were not retained or given to secure the purchase price of said lot, but were given at the instance of the said defendants to secure the payment of a note given to cover indebtedness of A. C. Reeves to said building materials company for lumber and materials and monies loaned and advanced; and that said vendor's lien and deed of trust were a part of a scheme and subterfuge suggested by the defendants in an attempt to secure a lien and mortgage on the homestead of these plaintiffs to secure certain indebtedness, as aforesaid, in violation of the Constitution and Statutes of Texas; and that said transaction was simulated and conceived for the sole purpose of attempting to place a lien on plaintiffs' homestead in violation of law, and that said liens are invalid and of no force and effect; and same constitute a cloud on plaintiffs' title to said lot."

Now let me recapitulate: The land was purchased from Helene Korff in the year 1928 for $1,750, to be paid for when deed was delivered. The deed was delivered by her to her agent, to be delivered to the purchasers when paid for. Helene Korff put the purchasers in possession and permitted them to make valuable permanent improvements thereon and to move thereupon as their home, and thereafter changed the nature of such transaction so as to make a new deed "in which said San Antonio Building Materials Company, instead of plaintiffs should be named as grantee, and that said defendant would thereupon take a note of these plaintiffs for $6,500.00, and then execute a deed to plaintiffs conveying said lot to plaintiffs and retaining in said deed the vendor's lien to secure payment of the said note for $6,500.00." This merger and change was made and the purchasers were permitted to remain on said premises, using and enjoying same, until the institution of this suit, which was on April 25, 1929, and the former transaction was as completely changed as possible to make this new

agreement, whereby the homestead rights could be avoided.

While there was no purchase money paid, there was none necessary, as the homestead right was acquired by the seller placing the purchaser in possession, and by his making valuable improvements on the land. Bringhurst v. Texas Co., 39 Tex. Civ. App. 500, 87 S. W. 893; Page v. Vaughan (Tex. Civ. App.) 173 S. W. 541; Wells v. Foreman (Tex. Civ. App.) 199 S. W. 1174; Hofheinz v. Wilson (Tex. Civ. App.) 286 S. W. 958; Hickman v. Talley (Tex. Civ. App.) 8 S.W.(2d) 267; Mondragon v. Mondragon (Tex. Civ. App.) 239 S. W. 650.

In the well-considered case of Dixon v. McNeese (Tex. Civ. App.) 152 S. W. 675, 676, which I quote with approval, Chief Justice Fly said: "It is well settled in Texas that a parol sale of land will be upheld where the vendee has been put in possession of the land, and, relying on the parol sale, has made valuable improvements thereon. Such circumstances create an equitable title in the vendee, and courts of equity will enforce his rights. To constitute a valuable consideration, it is not necessary that the purchase money should have been paid, but, if money has been expended in improvements on the property on the faith of the verbal contract, it constitutes a valuable consideration."

As much as the writer hates not to concur in the disposition of this case, he feels it his duty to file this his dissent.